The protest is sustained and judgment will be rendered accordingly.

(C. D. 1274)

ED BOUNDS, JR. *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 27, 1950)

*James G. Sargent* (*William Whynman,* associate counsel) for the petitioner.
*David N. Edelstein,* Assistant Attorney General (*Harold L. Grossman,* special attorney), for the respondent.
*Philip Stein, amicus curiae.*

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: Remission of additional duties, accruing by reason of the final appraised value exceeding the entered values of chewing gum exported from Mexico and entered at the port of Laredo, Tex., is sought in these proceedings under authority of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489).

Nine shipments are involved. All entries were made at the purchase price; the first shipment at 3.50 pesos per hundred pieces and all subsequent ones at 4 pesos per hundred pieces. In each instance, the appraiser advanced the value to 4.25 pesos per hundred pieces.

The petitioner, the customhouse broker who prepared and filed the entry papers, and the United States appraiser at the port of entry, who was called by the Government, were the witnesses. Their testimony is reduced to this summation.

Market conditions prevailing at the time of the entries in question— between November 3, 1943, and December 15, 1943—were explained in testimony of the United States appraiser. At that time, shipments

of chewing gum from Mexico were numerous. The business was very active. Several factories were producing different brands whose prices varied. In some instances, a manufacturer produced more than one brand and sold each at a different price. There was not ",much of a fluctuation in prices but we had an awful lot of difficulty finding out the actual prices," according to the appraiser.

Importation of chewing gum was a new venture for petitioner. In fact, the earliest of the present shipments was his first experience. His interest in the business was developed through an arrangement with an individual, known to petitioner in Laredo as an importer, who agreed to negotiate with the Mexican manufacturer for the purchase and shipment of chewing gum from Guadalajara, Mexico, the place of manufacture, to the middle of the international bridge at Laredo, where petitioner took possession of the merchandise and assumed all obligations for proper entry and sale thereof.

Petitioner's personal dealings were with a representative of the Mexican manufacturer. Payments, usually in advance of deliveries, were made direct to the said representative in an open running account.

A uniform procedure was followed upon arrival of each shipment. Prior to entry, petitioner conferred with his customhouse broker and the Mexican manufacturer's representative with a view toward obtaining all pertinent information concerning the importation, particularly with reference to price fluctuation and general market conditions.

In connection with the first two entries, submission sheets (petitioner's exhibits 3 and 4) were presented to the appraiser who examined his records and finding "no pertinent value information" returned the said sheets to petitioner (importer) with the request to "Ascertain correct foreign or export value from seller or shipper." Submission sheets were not filed when subsequent shipments arrived as all related to the same order and without any increase in price, so under controlling customs regulations no such paper was required.

Petitioner's effort to obtain the proper dutiable value of his merchandise was not limited to discussions with the Mexican representative. He not only talked with other importers in Laredo but also went to Monterey, Mexico, and met "four or five people down there, whose word I took on things and through whom I had tried to buy gum before this and I knew them to be people who knew the gum market and I am sure that I have talked to them down there; I know I talked to them down there. In other words, I made every effort to be sure at all times that what I was doing was in the proper run."

Testimony of the United States appraiser is corroborative of that offered by petitioner, concerning the latter's participation in the transactions and his arrangements with others in negotiating the shipments.

In response to a question propounded by the trial judge, the writer of this opinion, asking whether information, possessed by petitioner at the time of entry and disclosed during the course of his testimony, would have changed the action of appraising officers if such information had been supplied them, the appraiser answered, "The information he said he had obtained from Mr. Ramirez on the other side wouldn't have helped us at all because the only way we got the information was through foreign investigations and local investigations." Statements by the said customs official to the effect that he had difficulty in locating petitioner to obtain desired information were clarified in rebuttal testimony when petitioner stated that "I had notice that Mr. McAskill [the appraiser] had requested some information but I had also notice at the same time that somebody had gone over there to give it to him and I certainly wouldn't refuse him; I certainly wouldn't hold back if I had any information I could give him. * * * As soon as I was told he wanted to see me I went over there to see him." Petitioner further explained that he had no office either in Laredo or any other place, that his office was "Under my arm, in the car, wherever I was," and that during the period in question he lived either in Dallas or in San Antonio.

Government counsel, in their brief, refer to *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. 29, C. A. D. 392; *R. W. Gresham* v. *United States*, 27 C. C. P. A. 106, C. A. D. 70; *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. 215, T. D. 49306, and cases cited therein. It is unnecessary to review any of the cases mentioned by respondent because all presented a factual foundation materially different from that established herein. None of them can be applied to the present situation.

In this case, petitioner was dealing in a peculiar market, where, as the appraiser admitted, there was "an awful lot of difficulty finding out the actual prices." It was a rather confused condition that confronted petitioner yet throughout the period in question his conduct, as reflected by the record, was an honest effort to meet customs requirements in entering his merchandise.

The writer of this opinion heard the case at Laredo and Houston, while on circuit, and thus had the advantage, enjoyed by a trial judge, to observe the demeanor of the witnesses. All created favorable impressions. Each was straightforward in offering his testimony, displaying a willingness to supply the court with all essential facts.

The entry of the merchandise at values less than what were found on appraisement was without intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

The petitions are therefore granted and judgment will be rendered accordingly.